Receipt number 9998-3337874)

ORIGINAL

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FILED
MAY 18 2016
U.S. COURT OF
FEDERAL CLAIMS

**601 NEW JERSEY AVENUE, LLC,**

***Plaintiff,***

**v.**

**THE UNITED STATES OF AMERICA,**

***Defendant.***

**No.** 16-591 C

**COMPLAINT**

Pursuant to 41 U.S.C. § 7104(b)(1) and 28 U.S.C. § 1491(a)(1) and (2), 601 New Jersey Avenue, LLC ("Lessor" or "Plaintiff"), by and through its attorneys, hereby brings this action to (i) challenge the denial of Lessor's certified claim dated December 23, 2014, by a Contracting Officer ("CO") of the U.S. General Services Administration ("GSA" or the "Government" or "Defendant") and (ii) recover damages in the amount of $769,682.40 in accumulated operating cost adjustments, plus interest accruing thereon, due under a two-year extension of a lease for real estate between Lessor and Defendant.

For its Complaint against Defendant, Lessor states as follows:

**INTRODUCTION**

1. This Complaint arises out of GSA Lease GS-11B-01307, dated May 17, 2001 (as amended from time to time, the "Lease"),[1] which was entered into by Lessor and the Government for approximately 217,308 BOMA (Building Owners and Management Association standard) rentable square feet ("BRSF") (yielding approximately 192,426 BOMA usable square feet ("BOUSF") of office space on the first through seventh floors (the "Premises") of the

[1] Also referenced by the parties in various documentation as "LDC01307."

building located at 601 New Jersey Avenue, NW, Washington DC (the "Building"). Ex. 1; Ex. 5.

2. The Lease is administered by GSA on behalf of the tenant agency, the Federal Trade Commission ("FTC" or the "Agency"). The Lease was signed on May 17, 2001, had a composite lease and rent commencement date of August 10, 2002, and had a ten-year firm term with an expiration date of August 9, 2012. *See* Ex. 1; Ex. 2 at 1.

3. On or about April 5, 2012, the GSA requested that the FTC be allowed to continue occupancy of the Premises for an additional 24-month period, and requested a formal 24-month extension to the Lease. *See* Ex. 2 at 1.

4. In response to GSA's request, Lessor proposed the terms of a 24-month extension of the Lease in a letter dated April 30, 2012. Ex. 2. The April 30 letter established a schedule for increased annual rent, and specifically provided that "[t]his annual rent is payable *in addition* to accrued annual adjustments and real estate tax passthroughs using the same base year originally specified in the … Lease." Ex. 2 at 2 (emphasis added). This provision was necessary because the increase in the rental rate did not adequately compensate Lessor for (a) the then-market base rent, (b) the market premium attributable to a short term extension, or (c) the difference between what the Government was paying based on Consumer Price Index ("CPI-W") increases of operating costs and the actual increases in operating costs that had accumulated over the initial ten-year firm term. The April 30 letter also included the additional requirement that "[t]he terms set forth herein shall be memorialized pursuant to a mutually acceptable Supplemental Lease Agreement ('SLA')." *Id.*

5. In response to the April 30 letter, the parties negotiated and signed a draft SLA (No. 42), implicitly adopting the agreed-upon terms of the April 30 letter. Ex. 3. The parties

executed SLA No. 42 on or about August 30, 2012, and thereby formally extended the term of the Lease for a period of two years, from August 10, 2012 through August 9, 2014 (the "Extension Period"). Ex. 3.

6. SLA No. 42 established an increased annual rent for each Lease year of the Extension Period. However, SLA No. 42 left unchanged the operating cost base to be used to calculate the operating cost increases for each Lease year, and specifically provided that "all future operating cost adjustments, real estate tax adjustments and BID [Business Improvement District] tax adjustments shall continue through the Extension Period." Ex. 3 at 1.

7. Throughout the term of the Lease, the Government had been accumulating operating cost increases, adding them to the rent each year for the subsequent Lease year.

8. At the time SLA No. 42 was executed in August 2012 (*i.e.*, at the end of the last Lease year of the initial term), the Government was paying $32,070.10 per month ($384,841.20 per year) in accumulated operating cost increases over the base rent amount of $1,454,740.50. Pursuant to the Lease and SLA No. 42, the Government was required to continue to pay such accumulated amounts plus the additional operating cost increases for Lease years 2013 and 2014. However, the Government has refused to pay these accumulated amounts for the Extension Period.

9. Under the Lease and SLA No. 42, Lessor is entitled to reimbursement for operating cost increases accumulated prior to the execution of the Extension Period for Lease years 2013 and 2014, which the Government refuses to pay, in the amount of $769,682.40 ($32,070.10 per month for the two-year extension period), plus interest accruing on such amounts since August 10, 2012.

## PARTIES

10. Lessor is a limited liability company organized under the laws of the State of Delaware.

11. Defendant is the United States of America, acting through GSA. GSA entered into the Lease in order to provide space for the Agency for the Lease term, including the Extension Period.

12. At all times herein relevant, GSA's CO for the lease was C. Elizabeth Spivey. Ms. Spivey's address is U.S. General Services Administration, 7th & D Streets, SW, Washington, DC 20407.

## JURISDICTION

13. Lessor's claim arises under the Contract Disputes Act, 41 U.S.C. § 7104(b)(1), which provides for review in this Court of any final decision of a CO of, among other agencies, the GSA. Lessor's Complaint challenging the denial of its certified claim by the GSA CO falls within the Court's jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) and (2).

14. Lessor's Complaint is timely filed. On August 31, 2015, the CO forwarded to Lessor's representatives an undated letter reflecting the CO's final decision denying Lessor's timely submitted certified claim. Ex. 4. Accordingly, Lessor's Complaint is timely filed within 12 months of the CO's denial, and is properly before this Court. 41 U.S.C. § 7104(b)(3).

## STATEMENT OF FACTS

15. The Lease provides that operating cost increases (or adjustments) are determined and paid by the Government on an annual basis based upon the year-to-year escalation of the Consumer Price Index ("CPI-W"). The operating cost adjustments are calculated based upon a

Base Operating Cost and a Base CPI-W. *See* Ex. 1 (Attaching Solicitation of Offers at 15); Ex. 5.

16. SLA No. 6 of the Lease provides that "[p]ursuant to Paragraph 3.6 'Operating Cost Base,' the Operating Cost Base for purposes of calculating future Operating Cost Adjustments as provided by the Lease and its Attachments shall be $1,454,740.50 or $7.56 per BOUSF." Ex. 5 at 3 (¶7). The Lease Commencement Date was August 10, 2002; therefore, the CPI-W Index used for purposes of calculating the operating cost increases was that for July 2002 (the "Base Year").

17. There are two methods typically used to calculate operating cost increases, both of which, if done correctly, arrive at the same end result in providing for an adjustment to operating costs.

18. The first calculation method (the "Base Year Method") involves a comparison of the CPI-W for an Adjustment Year (defined below) against the CPI-W for the Base Year (the "Base CPI-W"), less operating cost increases previously paid in prior years. Section 3.5 of the Solicitation For Offers incorporated by the Lease provides that, on or about the anniversary of the Lease Commencement Date each year following the Base Year (an "Adjustment Year"), the CPI-W index for the month prior to the month in which the Lease Commencement Date anniversary occurs (*i.e.*, July of every Lease year of the term) is compared to the Base CPI-W (*i.e.*, the CPI-W for July 2002). Ex. 1 (Solicitation of Offers at 15). The percentage difference between the CPI-W for the Adjustment Year and the Base CPI-W is then multiplied by the Operating Cost Base and the resulting product is added (or subtracted, if applicable in the case of a decrease in CPI-W) to the then-current rent amount. Any increase in operating costs on account of prior Adjustment Years (that have already been added to the then-current rent

amount) are subtracted from the total rent for the applicable Adjustment Year so that such escalations are not counted twice. Thus, for example, using the Base Year Method, the CPI-W for July 2003 would be compared against the CPI-W for July 2002. The difference would be multiplied by the Operating Cost Base and the resulting product (the "2003 Operating Cost Increases") would be added (assuming an increase) to the then-current rent amount. The next year, the CPI-W for July 2004 would be compared against the CPI-W Index for July 2002. The difference would be multiplied by the Operating Cost Base and the resulting product (the "2004 Operating Cost Increases") would be added (assuming an increase) – net of the 2003 Operating Cost Increases – to the then-current rent amount.

19. The second calculation method (the "Year-to-Year Method") involves a calculation of the operating cost increases based upon a comparison of the CPI-W for an Adjustment Year against the CPI-W for the immediately preceding Lease year. Under this calculation method, there is no need for a reduction on account of previous operating cost increases paid. So, for example, using the Year-to-Year Method, the CPI-W Index for July 2003 would be compared against the CPI-W Index for July 2002. The difference would be multiplied by the Operating Cost Base and the resulting product (the "2003 Operating Cost Increases") would be added (assuming an increase) to the then-current rent amount. The next year, the CPI-W for July 2004 would be compared against the CPI-W Index for July 2003. The difference would be multiplied by the Operating Cost Base and the resulting product (the "2004 Operating Cost Increases") would be added (assuming an increase) – to the then-current rent amount. *See* Ex. 7 (attaching Ex. B, SLA Nos. 20, 26, 30, 34, 44, 48).

20. Under both the Base Year Method and the Year-to-Year Method, the operating cost increases are cumulative, that is, each increase is added to the then-current rent. Over the

term of a lease, the total of all CPI-W adjustments becomes a significant portion of the rent bargained for by the lessor to assist it in recouping some – but rarely all – of the actual increases in operating costs for the Building.

21. The Government used the Base Year Method in calculating operating cost increases for Adjustment Years for the initial Lease term from July 2003 through and including July 2007. The operating cost adjustment for each of these Adjustment Years was calculated by a comparison to the July 2002 Base Year CPI-W, net of previous increases paid. For each of these Adjustment Years, the operating cost increases were cumulative (*i.e.,* added to the then-current rent).

22. Beginning with Adjustment Year 2008, and pursuant to SLA No. 20, the Government began using the Year to Year Method. Ex. 6; Ex. 7 (Ex. B, SLA Nos. 20, 26, 30, 34, 44, 48). Accordingly, for Adjustment Years 2008 through and including Adjustment Year 2012, the Government did not net out the increases from previous Adjustment Years, but simply added the operating cost increases for such Adjustment Years to the then-current Operating Cost Base amount. Thus, for example, for year 2008, the Government added the accumulated increases from Adjustment Years 2003 through 2007 (totaling $228,000.21) to the original 2002 Operating Cost Base amount of $1,454,740.50, arriving at a new Operating Cost Base amount of $1,682,740.71. *See* Ex. 7 (Ex. B, SLA Nos. 17, 20). This methodology continued through Adjustment Year 2012 (*i.e.,* the end of the initial ten-year term).

23. Pursuant to SLA No. 42, the Lease was extended for the Extension Period. Ex. 3. SLA No. 42 specifically provides: "For the purposes of operating cost adjustments, the next CPI-W adjustment shall be due on August 10, 2012. All future operating cost adjustments, real estate tax adjustments, and BID tax adjustments shall continue through the Extension Period."

Ex. 3, ¶3. The term "future operating cost adjustments" referred to the cumulative operating cost adjustments that had been paid since 2003.

24. During the Extension Period, the Government paid the annual operating cost increases for 2012 ($23,807.85) and for 2013 ($37,306.12), but did not pay the accumulated increases for 2003-2011, which amount should have been added to the base rent amount payable under SLA No. 42, and which it should pay to fairly compensate Lessor for the then-market base rent deficiency, the market premium for a short term extension, and the accumulated increases of operating costs as bargained for. The Government properly paid the operating cost adjustments during the original lease term using first the Base Year Method and, later, the Year-to-Year Method, but it erroneously paid using a hybrid calculation method during the Extension Period. As a result, the Government has short-paid Lessor by the sum of $32,070.10 per month x 24 months, or $769,682.40.

25. By letter dated December 23, 2014, and after numerous informal attempts by Lessor to resolve this issue with the Government, Lessor submitted a certified claim pursuant to the Contract Disputes Act in the sum certain of $769,682.40, representing the total amount of outstanding operating cost adjustments due under the Extended Lease, plus interest due in accordance with Lease Clause 552.232-78 (Prompt Payment). Ex. 7. Additionally, pursuant to 41 U.S.C. § 7109, Lessor sought interest on the full amount claimed from the date that the CO received the claim. Plaintiff certified this claim in accordance with 41 U.S.C. § 7103(b)(1).

26. On August 31, 2015, the CO issued a final decision denying Lessor's certified claim. Ex. 4.

**COUNT 1**

**(Material Breach of Lease for Failure to Pay Accumulated Operating Cost Increases)**

27. Lessor incorporates by reference the foregoing paragraphs 1-26 as if fully stated herein.

28. GSA has breached the Lease, as amended by SLA No. 42, by failing to pay the accumulated operating cost increases during the two-year Extension Period.

29. Pursuant to the Lease and SLA No. 42, GSA is required to pay the accumulated operating cost increases. As set forth above, that amount is $769,682.40.

30. Despite Lessor's written demands for payment, GSA has failed to pay Lessor any of the $769,682.40 due.

31. On December 23, 2014, Lessor submitted a properly certified claim for payment of the accumulated operating cost increases in the sum certain amount of $769,682.40, plus interest under the Prompt Payment Act and the Contract Disputes Act.

32. The CO issued a formal denial of this claim on August 31, 2015.

33. Because GSA has improperly refused to pay the above-described accumulated operating cost increases, it is in material breach of the Lease.

34. GSA owes Lessor $769,682.40, which represents the total amount of accumulated operating cost increases due under the Lease.

35. GSA also owes Lessor interest on the balance of $769,682.40 in accordance with Lease Clause 552.232-75 (Prompt Payment). In addition, pursuant to 41 U.S.C. § 7109, Lessor is entitled to interest on the full amount claimed from the date the CO received Lessor's certified claim.

**PRAYER FOR RELIEF**

WHEREFORE, Lessor respectfully requests that this Court:

(i) Declare Defendant to be in material breach of the Lease;

(ii) Award Lessor damages in the amount of $769,682.40 in operating cost increases due under GSA Lease No. GS-11B-01307, as amended by SLA No. 42, plus interest under the Prompt Payment Act and the Contract Disputes Act, or at a minimum, declare that Lessor is entitled to such payment; and

(iii) Award Lessor such other and further relief that the Court deems appropriate and just.

Dated: May 18, 2016

Gregory T. Jaeger
*Counsel of Record*

*Of Counsel*
Amelia J. Schmidt

STROOCK & STROOCK & LAVAN LLP
1875 K Street, Suite 800
Washington, DC 20006
Tel: 202-739-2810
Fax: 202-739-2895
Email: gjaeger@stroock.com

*Counsel for Plaintiff, 601 NJ Avenue, LLC*